IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VON HAMMOND, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-18-3809 |
| WARDEN RICHARD J. GRAHAM, JR., | * | |
| | * | |
| Respondent. | | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Von Hammond's Petition for Writ of Habeas Corpus (ECF No. 1). The matter is ripe for review, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2021); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that petitioners are not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons outlined below, the Petition will be dismissed and the Court will decline to issue a certificate of appealability.

## I.     BACKGROUND

Petitioner Von Hammond is an inmate who is incarcerated at Western Correctional Institution in Cumberland, Maryland. (Pet. Writ Habeas Corpus ["Pet."] at 1, ECF No. 1). On August 29, 2014, following a jury trial in the Circuit Court for Baltimore City, Hammond was convicted in two related cases of first degree rape, second degree rape, third degree sex offense, fourth degree sex offense, second degree assault, and kidnapping. He

is serving a term of life imprisonment for the first degree rape offense and a ten year

consecutive sentence for kidnapping. (Id.).

**A.**     **Factual Background**

The Court of Special Appeals of Maryland, on direct appeal, summarized the

evidence adduced at trial as follows:

> On February 13, 2009, a woman whom we shall refer to as
> "D.J." was driving home alone, when, around 10:00 p.m., she
> exited the Baltimore beltway and pulled over to retrieve some
> cigarettes from the trunk of her vehicle. When she re-entered
> her car, Hammond—a stranger to her—was in the passenger
> seat. Hammond held a knife at D.J.'s side and told her to start
> driving. Fearing for her safety, D.J. complied and followed
> Hammond's directions. Eventually, Hammond had D.J. park
> the car in an alley behind a block of rowhouses.
>
> Hammond took the keys from the ignition and got out of the
> vehicle. Coming around to the driver side, Hammond reached
> through the window, grabbed D.J. by the hair, and dragged her
> out of her seat. D.J. struggled with Hammond as he dragged
> her to a window of one of the rowhouses, opened it, and threw
> her inside. Hammond followed D.J. into a sparsely-furnished
> room. D.J. pleaded with Hammond to stop and let her go, but
> Hammond punched D.J. between the eyes, stunning her. D.J.
> fell onto a mattress. Hammond leapt onto D.J.'s back and put
> an arm around her neck, choking her. Hammond momentarily
> released his hold, but then started choking D.J., again, to the
> point that D.J. was losing consciousness. Hammond screamed,
> "Die, bitch, die," while he choked her.
>
> Hammond also beat D.J. with objects at hand, including a two-
> by-four, a stereo speaker, and a hammer. D.J. testified that
> Hammond hit her ankles and the inside of her knees with the
> hammer, beat her about the torso and face with the two-by-
> four, and hit her across the face with the stereo speaker. D.J.
> also recalled being hit across the face with a glass object. At
> one point, D.J. was bleeding so badly that Hammond threw her
> a towel and said that she was "bleeding all over the place,
> bitch." Once D.J. was on the ground, Hammond stomped on

her elbows and wrists. He also ripped D.J.'s necklace and rings off and put the rings in his pocket.

After the beating stopped, D.J. was lying on her stomach on the mattress. Holding her arms and legs behind her, Hammond hogtied her using shoelaces and a stereo cable. Then, Hammond pulled down D.J.'s pants and vaginally raped her. Once Hammond finished, he left the room momentarily. When he returned, he took D.J.'s keys and threw her out of the same window he used to enter the building. D.J. attempted to scream for help, but she could not yell loudly due to the beating. D.J. heard Hammond leave in her car. Shortly thereafter, she heard a neighbor say that she had called police.

Officer Monica Nashan responded to the neighbor's 911 call. When Officer Nashan arrived near the scene, she could hear someone faintly screaming. Eventually, Officer Nashan found D.J. in an alley; she was bleeding from her head and face, and Officer Nashan stated that she was hysterical. Officer Nashan cut the ties binding D.J.'s limbs and transported her to the hospital, where she was admitted at approximately 2:00 a.m. on February 14th. On the way there, D.J. told Officer Nashan that she had been beaten and raped. While Officer Nashan transported D.J. to the hospital, Officer Valencia Gavin secured the crime scene at 1940 Hollins Street and its abutting alley.

At the hospital, doctors treated D.J.'s injuries, which were "life-threatening," according to Nurse Barbara Boal. Following medical treatment, Nurse Boal conducted a SAFE exam in order to treat D.J. and collect evidence. Initially, D.J. was "hysterical," screaming, crying, and pulling the blankets over her head. She screamed, "Can't you see? Can't you see? He raped me. Can't you see?" Eventually, D.J. calmed down to a "constant cry," and told Nurse Boal about the attack.

Nurse Boal identified D.J.'s injuries as extensive. Nurse Boal testified that D.J. had suffered an avulsion—meaning that part of her lip was missing—and she had swollen areas on her face, lumps on her head, swollen lips, scratch marks and abrasions all over her body, as well as red marks on her knees, which would later bruise. D.J.'s right eye was black and swollen shut. Additionally, Nurse Boal pointed out that D.J. had ligature

marks on her hands and feet; Nurse Boal explained that a ligature mark is a type of bruise that indicates something had been tied tightly on D.J.'s body. Nurse Boal also diagrammed a "patterned injury" on D.J.'s face, meaning that an implement was used to create the injury. Nurse Boal also noted that D.J.'s neck was swollen with areas of redness. In addition to a vaginal swab, Nurse Boal collected scrapings from D.J.'s fingernails, as well as D.J.'s bloodstained clothing.

Detective Robert Faison recovered the shoelace and stereo cable that Officer Nashan had cut off of D.J. from the crime scene. Police also recovered a two-by-four, stereo speaker, and hammer. Police found D.J.'s vehicle in an alley in the 1900 block of Hollins Street, and her cell phone was inside the car. Later, Detective Faison spoke with D.J. at the hospital, and she recounted the attack.

A couple of days after the incident, D.J. spoke with police and identified Hammond in a photo array as her assailant. In investigating Hammond, police learned that he resided at 1915 Hollins Street with his grandmother, and the grandmother also owned 1940 Hollins Street, where the attack occurred. Jennifer Bresett identified sperm on the vaginal swab taken from D.J. Jennifer Ingbretson analyzed the DNA evidence recovered from the crime scene, the SAFE kit, and D.J.'s vehicle. She testified that the sperm sample from the vaginal swab matched D.J. and Hammond. DNA from a portion of the shoelace matched D.J. and an unknown individual and excluded Hammond. DNA from another segment of the shoelace, however, matched D.J. and Hammond at 11 of 13 loci. Ms. Ingbretson stated that DNA evidence recovered from other items—such as D.J.'s vehicle, the hammer, and the speaker—was inconclusive. She indicated that there was DNA evidence on these items, but not enough to compare to anything.

D.J. testified that all of her top teeth had been removed due to the beating, as well as most of her bottom teeth: she stated that she had only six original teeth in her mouth. In the days after the attack, D.J. stated that her left eye bruised, she suffered hearing loss, and her knees bruised to the point where she could not walk.

<u>Hammond v. State</u>, No. 929, Sept. Term 2015, 2016 WL 3683509, at *1–3 (Md.Ct.Spec.App. July 12, 2016) (footnotes omitted).[1]

## B.      Procedural Background

### 1.      State Criminal Proceedings

When Hammond was brought to trial in 2009, the victim was unavailable and the State had not completed the DNA analysis of the recovered evidence. <u>Hammond</u>, 2016 WL 3683509, at *3. On June 18, 2009, the trial court granted the State's request to place the case on the stet docket. <u>Id.</u> Hammond agreed to abide by the special condition that he have "no unlawful contact with the victim." (Misc. Pet. Exs. at 4, ECF No. 1-1).[2] On July 30, 2013, the State moved to re-open the case and Hammond objected. The trial court granted the State's request. <u>Hammond</u>, 2016 WL 3683509, at *3; (Misc. Pet. Exs. at 11–18). The jury trial took place on August 22–28, 2014. <u>Hammond</u>, 2016 WL 3683509, at *3.

At his trial, the jury convicted Hammond of first and second degree rape, third and fourth degree sex offense, second degree assault, and kidnapping. (State R. at 1–2, 18, ECF No. 12-1; Pet. at 1). He was sentenced to a life term of imprisonment for the first degree rape and ten consecutive years for kidnapping. <u>Hammond</u>, 2016 WL 3683509, at *3.

### 2.      Direct Appeal

On appeal, Hammond raised the following claims: (1) the trial court erred in allowing the Sexual Assault Forensic Examination ("SAFE") nurse to recount D.J.'s prior

---

[1] Where "Appellant" was used by the Court of Special Appeals, "Hammond" has been substituted for clarity.

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

consistent statements; (2) the trial court abused its discretion in reopening Hammond's case from the stet docket; (3) the evidence adduced at trial was insufficient to convict Hammond of first degree rape; and (4) Hammond's kidnapping conviction should have merged into the rape conviction for sentencing purposes. Id. at *1. The Court of Special Appeals affirmed the judgment. Id.

With respect to Hammond's claim that the trial court erred in removing the case from the stet docket, the Court of Special Appeals found that the trial court had not abused its discretion when it found good cause to reopen the case. Id. at *4. Additionally, the Court of Special Appeals found that Hammond waived his claim regarding the sufficiency of the evidence because he "chose to submit" when he made his motion for judgment of acquittal. Id. at *5. Nevertheless, the Court stated that if it were to address Hammond's claim, it would find the claim "entirely without merit, as the State presented ample evidence of the aggravating factors elevating a second-degree rape into rape in the first degree." Id. at *6.

Hammond's timely petition for writ of certiorari was denied by the Court of Appeals on October 31, 2006. Hammond v. State, 147 A.3d 400 (Md. 2016).

### 3.    Post-Conviction Proceedings

On March 20, 2017, Hammond initiated post-conviction proceedings by filing a pro se petition under Maryland's Uniform Postconviction Procedure Act ("UPPA"), Md. Code Ann., Crim. Proc. § 7-101 et seq. (State R. at 13, 27, 165). The petition was later supplemented by counsel. (Id. at 165).

Among other claims, Hammond alleged that trial counsel had been constitutionally ineffective for failing to: (1) "file a motion in limine regarding good cause to re-open

charges placed on the Stet Docket four (4) years prior"; (2) provide specific grounds in support of the Motion for Judgment of Acquittal at the close of the State's evidence; and (3) ensure the jury was properly instructed regarding the kidnapping charge. (Id. at 166–69).

During the post-conviction hearing, Hammond withdrew the first two claims listed above but proceeded on the ineffective assistance of counsel claim regarding the jury instruction. (Id. at 168). As to the jury instruction claim, Hammond argued that trial counsel should have objected when, in response to a jury question, the trial court told the jury that any movement of the victim, "however slight," would suffice to satisfy the asportation element of kidnapping, but that the law requires something more than "slight" movement and that the movement must be more than "incidental" to another crime. (Id. at 171–77). The post-conviction court denied relief on this claim, finding that Hammond had not shown that he was prejudiced by the instruction. (Id. at 174–76). The court denied all post-conviction relief on June 15, 2018. (Id. at 189).

Hammond filed a timely application for leave to appeal. (Id. at 12, 190–92). In the application, Hammond raised, among other claims, the claim that counsel was ineffective for failing to object to the kidnapping jury instruction. (Id. at 191). The Court of Special Appeals summarily denied his application on November 14, 2018. (Id. at 193–95).

### 4.    Federal Habeas Petition

Hammond, who is proceeding pro se, timely filed his Petition on December 11, 2018. In his Petition, he argues that: (1) his trial counsel was ineffective in failing to argue that the State abused its discretion by breaching the "plea agreement" when it reopened the

stetted case without good cause and after the statute of limitations had expired, (Pet. at 17); appellate counsel was ineffective when he failed to argue on direct appeal that the State breached the "plea agreement" by opening the stetted case without good cause and after the statute of limitation had expired, (Pet. at 18); (3) the trial court erred in its instruction to the jury on kidnapping, specifically by failing to advise the jury that kidnapping requires movement "for more than a slight distance," and that trial counsel rendered ineffective assistance by failing to correct the instruction, (Pet. at 19); and (4) trial counsel rendered ineffective assistance by failing to argue specific reasons why the motion for judgment of acquittal should be granted, (Pet. at 21).

Respondent filed its Answer to the Petition on January 28, 2019, arguing that Hammond's first, second, and fourth claims are procedurally defaulted. (Answer Pet. Writ Habeas Corpus ["Answer"] 16–20, ECF No. 12). On June 4, 2019, the Court advised Hammond of his right to file a supplemental reply and of his right to demonstrate that his claims are not procedurally defaulted or that he is otherwise entitled to have those claims reviewed. (June 4, 2019 Order at 2–3, ECF No. 20). Hammond filed Replies on March 14, 2019, June 19, 2019, and July 15, 2019. (ECF Nos. 15, 21, 23).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

#### 1.    **Procedurally Defaulted Claims**

Before seeking review pursuant to 28 U.S.C. § 2254, a person in custody must exhaust remedies available in state court by presenting each claim to the appropriate state court. A claim is procedurally defaulted when a petitioner has failed to present

the claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal. See Coleman v. Thompson, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); Murray v. Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); Murch v. Mottram, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction proceedings); Bradley v. Davis, 551 F.Supp. 479, 481 (D.Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

A procedural default may also occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman, 501 U.S. at 731–32). Under Maryland law, "an allegation of error is waived when a petitioner could have made, but intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction] petition." Md. Code Ann., Crim. Proc. § 7-106(b). A rebuttable presumption exists that this waiver was knowing and intelligent. Id. § 7-106(b)(2).

Procedurally defaulted claims are not subject to substantive federal habeas corpus review unless certain exceptions apply to excuse the procedural default.

Procedural default may be excused if a petitioner can demonstrate (1) both "cause" for the procedural default <u>and</u> that he will suffer "prejudice" if the claims are not considered on their merits; or (2) that failure to consider the defaulted claim(s) would result in a miscarriage of justice, i.e., the conviction of someone who is actually innocent of the offenses. <u>See</u> <u>Murray</u>, 477 U.S. at 495–96; <u>Breard</u>, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." <u>Breard</u>, 134 F.3d at 620 (quoting <u>Murray</u>, 477 U.S. at 488). "Prejudice" exists if a petitioner can show not merely that the alleged errors "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

Alternatively, the Court may reach a defaulted claim if the petitioner shows that failure to review the claim would result in a miscarriage of justice, that is, conviction of an individual who is actually innocent. <u>See</u> <u>Murray</u>, 477 U.S. at 495–96; <u>Breard</u>, 134 F.3d at 620. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Murray</u>, 477 U.S. at 496; <u>see also</u> <u>Reid v. True</u>, 349 F.3d 788, 806 (4th Cir. 2003). Assertions of actual innocence used as a gateway to review an otherwise defaulted claim must be supported by new evidence that demonstrates no reasonable juror could have convicted the petitioner. <u>See</u> <u>Buckner v. Polk</u>, 453 F.3d 195, 199–200 (4th Cir. 2006).

The record reflects that three of Hammond's claims before this Court were not presented at every available level of State court review and are now procedurally defaulted. In one supplemental response, rather than explain why these claims should be considered, Hammond states that he wishes to withdraw each of his defaulted claims. (Pet'r's Supp. Reply at 3, ECF No. 21). In a later filed supplemental response, Hammond reiterates his arguments regarding why and how each claim presented here constituted ineffective assistance of counsel. (Pet. Proceed Resp. Pet. at 3–7, ECF No. 34).

Hammond's first and fourth claims, which assert that trial counsel was ineffective in failing to argue that the State breached the plea agreement by reopening the stetted case and in failing to provide specific arguments in favor of his motion for judgment of acquittal, were arguably presented by Hammond in his post-conviction petition, but were each withdrawn by him at the post-conviction hearing and the post-conviction court expressly declined to address each of these claims. (State R. at 15; Misc. Pet. Exs. at 68). Because Hammond withdrew these claims, and the state court did not have an opportunity to address them, the claims are procedurally defaulted. Hurt v. Green, No. DKC-13-1331, 2015 WL 4578013, at *8 (D.Md. July 28, 2015) (holding that "because Petitioner has not 'fairly presented' the claim to the state courts by failing to complete, and instead, withdrawing his appeal of the unexhausted issue, he has procedurally defaulted his claim").

Hammond's second claim regarding appellate counsel's failure to challenge the reopening of his case from the stet docket is also procedurally defaulted as Hammond did not present this claim in any state proceedings. Hammond did not raise any claims

11

regarding the performance of appellate counsel during his post-conviction proceedings. (Misc. Pet. Exs. at 63–64).

Both these claims are procedurally defaulted because they were not and can no longer be raised in state court. When a claim has not been properly exhausted, the Court may find that there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. Coleman, 501 U.S. at 735 n.1 (finding that a procedural default occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred") (citations omitted). In Maryland, a criminal defendant is limited to one post-conviction proceeding, which, once finally resolved, cannot be reopened unless necessary "in the interests of justice." Md. Code Ann., Crim. Proc. §§ 7-103(a), 7-104; see also id. § 7-102 (providing that a post-conviction claim is subject to waiver); § 7-106(b)(2) (providing that a rebuttable presumption arises that a petitioner has knowingly and intelligently waived an allegation when the petitioner defaults upon the allegation in a prior post-conviction proceeding). Because Hammond withdrew his claims from consideration or never presented them, they may no longer be raised in any form of state post-conviction proceeding and each claim is therefore procedurally barred.

The Court lastly considers whether Hammond has established the applicability of any exceptions to the procedural default rule that would allow the claims to proceed. The Court sees none. Hammond has offered nothing to establish that a fundamental

miscarriage of justice would result if this Court does not reach the merits of the defaulted claims. Nor has Hammond provided any credible evidence demonstrating that he is actually innocent of the offenses of which he had been convicted. See Schlup v. Delo, 513 U.S. 298, 316 (1995). The Court therefore finds that Hammond's first, second, and fourth claims are procedurally defaulted and will not consider Hammond's Petition as to those claims.

### 2.    Remaining Claim

As to Hammond's sole remaining claim, an application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); accord Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions "the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted); see also White v. Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (citation omitted).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Williams, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) (citing Rice v. Collins, 546 U.S. 333, 341–42 (2006)). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. (internal quotation marks and citation omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003)).

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); accord Buck v. Davis, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 687–88. See Williams, 529 U.S. at 390. That test requires the petitioner to show that (a) his counsel's performance was deficient, and (b) he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687; accord Buck, 137 S.Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Harrington, 562 U.S. at *104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at

*88 (quoting Strickland, 466 U.S. at 690). The "first prong sets a high bar." Buck, 137 S.Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." Id. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord Buck, 137 S.Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. Strickland, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. Id. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in Strickland, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Nor must a court address both components if one is dispositive. Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing Strickland, 466 U.S. at 697). Because either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Hammond alleges in his Petition that trial counsel was constitutionally ineffective because he failed to correct the trial court's error in omitting "a crucial element from the jury instruction on kidnapping." (Pet. at 19). Hammond contends that the instruction given by the trial court was outdated and incorrect and the court erred in advising the jury that kidnapping only required movement "for more than a slight distance." (Id.).

The trial court instructed the jury as follows regarding kidnapping:

> [Hammond is] also charged with the crime of kidnapping. Kidnapping is the confinement or detention of a person against that person's will accomplished by force or threat of force coupled with the movement of that person from one place to another with the intent to carry or conceal. In order to convict Mr. Hammond of kidnapping, the State must prove that Mr. Hammond confined or detained [D.J.], that [Hammond] moved [D.J.] from one place to another, that Mr. Hammond both confined or detained and moved [D.J.] against her will, that he used force or threat of force to accomplish both the confinement or the detention and the movement[,] and that he moved [D.J.] with the intent to carry or conceal [D.J.]

(Misc. Pet. Exs. at 44).

During deliberation the jury sent a question regarding an element of kidnapping. (<u>Id.</u> at 47–48). The trial court further instructed the jury:

> Your first question that we received this morning is, "Would moving the victim from the scene of the rape, and in parentheses 'the room', to where the victim was found, in parentheses 'the alley', would that constitute 'movement' under the requirements for the kidnapping charge." And the best answer we can give you is, "Any movement, however slight, is sufficient if it is done with the intent to carry or conceal an individual."

(<u>Id.</u> at 48–49).

The state post-conviction court determined that the trial court initially provided a correct jury instruction, but "provided an inaccurate explanation of the law in response to the jury's question." (Misc. Pet. Exs. at 70–71). Maryland pattern jury instruction for kidnapping state that the State must prove "the defendant moved [the victim] for more than a slight distance from one place to another." Md. Crim. Pattern Jury Instrs. 4:19. The post-conviction court therefore held that trial counsel was deficient in not objecting to the court's response to the jury's question. (Misc. Pet. Exs. at 71). The post-conviction court nevertheless held that Hammond could not satisfy the prejudice prong of <u>Strickland</u> because the evidence adduced at trial demonstrated that the asportation element of kidnapping was satisfied. (<u>Id.</u> at 71–73). The court stated that Hammond "did not merely reposition the victim or adjust the victim's location while on the mattress." (<u>Id.</u> at 72-73). In fact, [Hammond] forced the victim out of the room and window of a house before the victim finally came to rest in the alley." (<u>Id.</u> at 73). Further, in addition to forcing the victim out of the window, the evidence adduced at trial clearly demonstrated that Hammond forced the victim at knifepoint to drive to the rowhouse where he beat and raped her. <u>See</u>

Carey v. State, 458 A.2d 90, 92 (Md.Ct.Spec.App. 1983) (holding that moving victim down two flights of steps within a home after sexual assault was sufficient asportation to convict the defendant of the separate offense of kidnapping).

In sum, the postconviction court found that Hammond was not entitled to relief as the record established that it was "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis, 560 U.S. at 390. This ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Thus, Petitioner has failed to present any basis for relief as to his third claim.

**C.    Certificate of Appealability**

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." Buck, 137 S.Ct. at 773 (quoting 28 U.S.C. § 2253(c)(2)). Hammond "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (citations omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citation omitted). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. See 28 U.S.C. § 2253(c)(2). Hammond may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d

528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

### III.   CONCLUSION

For the foregoing reasons, Hammond's Petition for Writ of Habeas Corpus will be dismissed and a certificate of appealability will not be issued. A separate Order follows. So ordered this 30th day of September, 2021.

_____/s/_____
George L. Russell, III
United States District Judge